THE STATE *ex rel.* MURPHY *et al.* v. STONE, *Governor, et al.*

### Division One, February 5, 1894.

Railroad: TAXATION: APPORTIONMENT OF PROPERTY: LENGTH OF ROAD. Only the length of the main track of a railroad is to be considered by the state board of equalization in determining the length of the road for the purposes of apportioning its property for taxation under Revised Statutes, 1889, section 7725, which provides that the board of equalization shall apportion the aggregate value of all distributable property belonging to, or under the control of, each railroad company to each county, township, city or incorporated town according to the ratio which the number of miles of said railroad completed in such county, township, city or incorporated town shall bear to the whole length of such road in the state.

### *Mandamus.*

WRITS DENIED.

*H. M. Meriwether* for relator.

(1) The words "such road" used in section 7725 include side tracks. Section 7725 refers back to section 7718, and requires that the board apportion the aggregate value of all property hereinbefore specified, to each county, etc., in which such road is located, according to the ratio which the number of miles of such road completed in such county, shall bear to the

whole length of such road in the state. (2) The construction of the statute by the board of equalization is violative of article 10, section 3, of the state constitution, which requires that taxes shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax. Section 5 of the same article requires that all railroad corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes on the real and personal property owned or used by them, and on their gross earnings, etc. Now it is evident that if a railroad company has property located in several counties of this state, some of which is located in a municipality, and by the construction as placed upon the statute by the state board, this property is relieved from municipal taxation entirely, the requirement of the constitution is violated. The law requiring uniformity of taxation, not only requires that taxes shall be uniform upon all of the property that is taxed, but also requires that all of the property of the same kind, which is susceptible of taxation, should be taxed, for if a portion of the property is relieved of taxation the burdens are necessarily increased upon the remainder. See *Dubuque v. Railroad*, 39 Iowa, 68; *Franklin v. Railroad*, 12 Lea, 550. (3) The construction placed upon the statute by the board of equalization is unreasonable. See Endlich on Interpretation of Statutes, sec. 73; *State v. Severance*, 55 Mo. 378; *Co. v. People*, 98 Ill. 356; *Railroad v. Morris*, 7 Kan. 210.

*R. F. Walker*, Attorney General, for respondents.

(1) In making this distribution of property, the board takes into consideration the length of the main track. There can be but one way to arrive at the length of a railroad. It is the distance between the

terminal points—*i. e.*, the distance one would necessarily travel, following the meanderings of the roadway, from the point of beginning to the end of the road. There may be a double track one-half of the way and innumerable side tracks or sidings, but the length of the road remains the same, whether there is one track or a dozen. That these double tracks or sidings serve to enhance the value of the road can not be doubted but they do not increase its length. *People v. Railroad*, 106 N. Y. 265; s. c., 34 Am. and Eng. R. R. Cases, 136. Nor do lateral or branch roads belonging to the same system as the main line serve to increase its length for the purpose of taxation. *Herbert v. Railroad*, 13 Atl. Rep. 904. (2) Section 7725, *supra*, was originally enacted as section 8 of "an act to provide for a uniform system of assessing and collecting taxes on railroads," approved March 10, 1871. From the time this act went into effect the state board of equalization has, in apportioning the value of railroad property in a county or other subdivision of a state for the purpose of taxation, apportioned such value to each county or other subdivision as the ratio which the number of miles completed in such county, etc., bore to the whole length of such road in the state; and in making such assessments, "the whole length of the road in the state" has uniformly been considered as the length of the main track of such road. While the question as to what constitutes "the whole length" of a railroad has never been expressly passed on by this court, the statute (sec. 7725, *supra*,) has frequently been under consideration, and the record in each case discloses the fact that the above construction is the one uniformly given to the statute. This fact, appearing as it does in the records of each case, must have been brought to the notice of the court in each of the cases, as it has been in the case at bar, by the exhibits filed with the plead-

ings; but in no instance has the interpretation of the board been questioned. *Washington Co. v. Railroad*, 58 Mo. 372; *In the Matter of the Apportionment of Taxes*, 78 Mo. 596; *State ex rel. v. Railroad*, 92 Mo. 137; *State ex rel. v. Railroad*, 97 Mo. 348; *State ex rel. v. Railroad*, 101 Mo. 120, 133.

BRACE, J.—This is a proceeding by *mandamus* instituted by the judges of the county court of Jackson county to compel the state board of equalization in determining the length of certain railroads and in apportioning the value of their property to said county for the purposes of taxation, to add to the length of the main track of each of said railroads, the length of its several side tracks, in order to find the entire length of such roads in this state, and in like manner to add to the length of the main tracks of each of said roads in said county, the length of its side tracks therein in order to ascertain the length of each of said roads in said county, and to apportion the value of the property of each of said railroads to said county in the ratio, that the latter length bears to the former, thus ascertained.

All taxes upon railroad property are required to be levied in accordance with the provisions of article 8, chapter 138, Revised Statutes, 1889. Section 7718 of that act provides that, "On or before the first day of January in each and every year, the president or other chief officer of every railroad company whose road is now or which shall hereafter become so far completed and in operation as to run locomotive engines, with freight or passenger cars thereon, shall furnish to the state auditor a statement, duly subscribed and sworn to by said president or other chief officer, before some officer authorized to administer oaths, setting out in detail the total length of their road so far as completed,

including branch or leased roads, the entire length in this state, and the length of double or side tracks, with depots, water tanks and turntables, the length of such road, double or side tracks in each county, municipal township, incorporated city, town or village through or in which it is located in this state; the total number of engines and cars of every kind and description, including all palace or sleeping cars, passenger and freight cars, and all other movable property owned, used or leased by them on the first day of June in each year, and the actual cash value thereof."

Section 7719 requires that a duplicate statement, such as is required in the preceding section, shall at the same time be furnished by the company to the clerks of the county courts of each county in the state, in which said road or roads may be located, of their property in such county.

Section 7720 requires that such statement shall be examined by the county court, and if found correct in description and valuation, be certified to the state auditor; if found incorrect or the value thereof insufficient, the court shall find what property has been omitted and return a description thereof with an official statement, properly certified, of all property thus omitted, and of the actual cash value of such property, and of all the property reported to them by the chief officer of the railroad company, to the auditor.

Section 7722 requires the state auditor to lay said returns made by the railroad companies and the county clerks before the state board of equalization, of which he is a member; and section 7721 provides in case of failure of any railroad company to make the statements required by the foregoing provisions, that the board shall ascertain the property of such company and fix the value thereof from the best information they can obtain.

Section 7723 provides that the state board of equalization shall annually "assess, adjust and equalize the aggregate valuation of the property of each one of the railroad companies in this state, specified in section 7718," and for that purpose power is given it to summon and compel the attendance of witnesses, and to increase or reduce the aggregate valuation of the property of any railroad company included in the statements and returns made by the railroad companies and the clerks of the county courts, or any other property of like kind that may come to its knowledge, of which no return has been made, and further provides that when a railroad extends beyond this state into another state, in which a tax is levied and paid on its rolling stock, then "the said board shall assess, equalize and adjust only such proportion of all the rolling stock of such railroad company, as the number of miles of such road in this state bears to the total length of the road, as owned or controlled by said company.

Section 7725 provides that "said board shall apportion the aggregate value of all property hereinbefore specified belonging to or under the control of each railroad company, to each county, municipal township, city or incorporated town, in which such road is located, according to the ratio which the number of miles of such road completed in such county, municipal township, city or incorporated town shall bear to the whole length of such road in the state, * * *."

Section 7726 requires the board to keep a record of its proceedings and file the same properly authenticated in the office of the state auditor, on receipt of which he is required by section 7727 to certify "to the secretaries of the respective railroad companies and also to the county courts of the proper counties, the action of said board, which certificate shall set forth the entire length of such railroad, including side tracks, in the state and

the valuation thereof per mile; the total value of the rolling stock of said railroad; the total length of the roadbed, including side tracks in each county, city, town, village and municipal township; also, the total value of roadbed and side tracks and rolling stock as adjusted, equalized, assessed and apportioned to such county, city, town, village and municipal township therein by said board."   *   *   *

Section 7728 provides that "All property, real, personal or mixed, including lands, machine and work-shops, roundhouses, warehouses and other buildings, goods, chattels, and office furniture of whatever kind, owned or controlled by any railroad company or cor-poration in this state, not hereinbefore specified, shall be assessed by the proper assessors in the several counties, cities, incorporated towns and villages wherein such property is located, under the general revenue laws of the state, and the municipal laws regu-lating the assessments of other local property in such counties, cities, incorporated towns and villages, respectively, but the taxes on the property so assessed shall be levied and collected according to the provisions of this article."

The remaining sections of the article provide for the levy and collection of all taxes to which other prop-erty is subject upon the value of railroad property, in this state ascertained in accordance with the provisions of the sections noted.

The main provisions of this law for the assessment of railroad property have been in force since 1871. Its most significant feature is the division of such property into two classes for the purpose of ascertaining its actual cash value. For the sake of convenience these classes may be denominated respectively, *local property* and *distributable property*. Distributable property con-sists of all the railroad property mentioned in section

7718. Local property consists of the railroad property mentioned in section 7728. The former consists of the "tracks, depots, water tanks, turntables, engines and cars of every kind and description, and all other movable property." The latter of all other property of the railroad company, real, personal or mixed, "including lands, machine and workshops, roundhouses, warehouses and other buildings, goods, chattels, and office furniture of whatever kind." The latter is assessed by the local authorities as property within the municipal subdivision of the state in which it is located. The former is assessed by the state board of equalization *in the aggregate* as an inseparable entirety so far as value is concerned, and that value distributed for the purposes of taxation to the political or municipal subdivisions, within which the railroad is located *by the mile*, and not with reference to the location of any particular part of that property within the limits of such subdivision. The duty of the board is to "assess, adjust and equalize" the *aggregate* value of all the tracks, depots, water tanks, turntables, engines and cars of every description and all other movable property of every railroad company in this state (sec. 7723), and to apportion such *aggregate value* to each county, municipal township, city or incorporated town in which such road is located according to the ratio which the number of miles of such road completed in such county, municipal township, city or incorporated town, shall bear to the whole length of such road in the state. Sec. 7725.

While it is necessary that the board should be advised in detail of the items, quantity, situation and value of the property which go to make up the entire thing, the value of which they are to assess, and for this purpose reports from the companies and from the county clerks are required to be made in detail, the

power to assess for purposes of taxation is limited to the valuation of the property as an aggregate "and can not be applied to divisible parts, whether by county boundaries or otherwise." *Washington County v. Railroad*, 58 Mo. 372.

After the board has ascertained the value of *this thing* made up of tracks, depots, water tanks, turntables, rolling stock, etc., known in common parlance, and denominated in this statute as a railroad, they are to apportion that value among the several municipalities of the state, in which any part of this whole thing is located by a certain standard in length—a mile—a mile of what? There can be but one answer. A mile of that thing called a railroad, made up of the items mentioned, in section 7718, the value of which as a whole is to be apportioned for such purpose. The number of miles of the railroad in this state, or within any municipal subdivision thereof is not to be measured by the length of its main tracks or of its main track and side tracks combined, any more than it is to be measured by the combined length of its main tracks, side tracks, rolling stock and the other property which go to make up the road value to be apportioned. It is the length of the whole thing, a railroad, which these several constituents, *in place*, go to make up, that is to be measured. Its length between its terminal points in this state, and its length in the several municipal subdivisions of the state is to be ascertained, and its value apportioned to each of said municipalities in the ratio that its length in the municipality bears to its whole length in the state. This is the obvious meaning of the statute, and the construction that has been placed upon it by the board of equalization from the beginning.

While the precise question in this case has not been passed upon directly by this court, yet what has

been ruled and said in cases that have come before it in which this statute was considered, and bearing indirectly upon this question, tend only to support this construction. See *Washington County v. Railroad, supra; State ex rel. v. Severance,* 55 Mo. 378; *In matter of Apportionment of Taxes,* 78 Mo. 596; *State ex rel. v. Railroad,* 92 Mo. 137; *State ex rel. v. Railroad,* 97 Mo. 348; *State ex rel. v. Railroad,* 117 Mo. 1. The interpretation is so plain, however, that it does not need the support of authority.

It is undoubtedly true, of this scheme of assessment, as was said in *Washington Co, v. Railroad, supra,* that "one county may contain railroad property worth far more than that within another and may yet receive a smaller apportionment for taxation by reason of having a less number of miles of road completed within its limits." And this feature of it forms the burden of the petitioner's complaint, and the reason urged why the construction contended for by the petitioners, should be put upon the statute, by which the length of the road in the state is to be measured, not by its tracks in place, but by adding the length of the side tracks to the length of the main tracks, in order, as it is said, that the statute may not become obnoxious to the constitutional provision contained in article 10, section 3, requiring that all taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

If this scheme for the assessment of distributable railroad property is unconstitutional, it is not seen how the removal, by construction, of any irregularity in the apportionment of the value of side tracks could relieve it of unconstitutional features, since these constitute but a part of the property value distributable under its provisions for the purposes of taxation, without regard to its particular *situs.* The statute as it reads, and as

we have construed it, is either constitutional or unconstitutional, and its meaning can not be changed by a forced construction for any purpose.

This is not the first time it has been suggested to this court, that this mode of assessment of railroad property is unconstitutional. In *State ex rel. v. Severance, supra,* it was strongly pressed upon the court that this scheme for the assessment of railroad property was unconstitutional, but the court after saying "so far as the actual roadbed is concerned, it is not questioned that this is a sufficiently uniform and just manner of making the taxes" ruled directly upon the question in the case (which was whether the assessment and apportionment under the statute of the value of the rolling stock of the railroad was constitutional) that "it was perfectly competent for the legislature to say that it should become a part of the road itself, and become property the same as the road, and that for the purposes of taxation it should be equally distributed through the counties, cities or towns through which it passed, in proportion to its length in those respective localities."

In 78 Mo. 596, *supra,* that part of the statute providing for the distribution of the railroad school tax was attacked, but was sustained, the court citing the *dicta* and ruling in *State ex rel v. Severance,* as sustaining the constitutionality of the act. And adding: "If the taxes were levied upon the actual value of the roadbed in the county, disconnected from the road, as an entirety, but little revenue would be derived by the county from this source, if fairly valued as a detached parcel of the road."

The power of the legislature to pass such a law was again recognized in *State ex rel. v. Railroad,* 92 Mo. 137, *supra,* upon the grounds that the roadbed is chiefly valuable as an entirety, that its aggregate value

is made up because of its continuity, that the portion of a railroad in a county when considered as disconnected with a continuous line, in most cases would be of little or no value, and for the further reason that "the rolling stock of defendant constituting a large and valuable part of its property, can not be localized in any one county, it being, from its very nature, constantly changing from one county to-day and another to-morrow." The question of the constitutionality of this act has not been questioned in any subsequent case, and may now be considered as settled. This statute comes as near complying with the constitutional requirements intended to secure uniformity of taxation, as the nature of property will admit. "Perfect equality in the assessment of taxes is unattainable. Approximation to it is all that can be had." *Commonwealth v. Savings Bank*, 5 Allen, 436, quoted in Cooley on Taxation, p. 167.

The arguments made here in support of the petitioner's construction of this act, may furnish reasons for a different, and, as is contended, a more equitable distribution of the assessed value of railroad property, which, with propriety, might be addressed to the legislature for a change in the law, but they can not change the plain meaning of that law, nor do they furnish substantial ground for questioning its constitutionality. The law is the same in regard to the assessment of leased roads, as of those owned by any railroad company, and we find nothing in the record requiring a separate consideration of its application to such roads.

The writs will be denied and the petition dismissed in each of these cases. All concur.